### I. B. Wilford, Appellant, v. E. R. Bliss, Appellee.

### Gen. No. 16,451.

1. CONTRACTS—*when no oral promise shown.* No oral promise by defendant to build an electric railway within a certain time is shown where two witnesses testify thereto, but their evidence shows that when requested to make such promise defendant refused and that the building of the road within such time was left to his honor.

2. CONTRACTS—*when parol evidence inadmissible to enlarge consideration expressed.* A contract by which plaintiff relinquishes all right, title and interest in a certain original contract and surrenders it to defendant in consideration that defendant surrender to plaintiff a certain bond is unambiguous and purports to state all things to be done by both parties, and evidence of a prior parol agreement by defendant, as part consideration, to build a railway is not admissible.

Appeal from the Circuit Court of Cook county; the HON. JESSE A. BALDWIN, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1910. Affirmed. Opinion filed October 16, 1912.

Statement by the Court. I. B. Wilford, appellant, in the fall of 1899, conceived the idea of promoting an electric line to run from the City of Asheville, N. C., to Weaverville, twelve miles north of Asheville. With one Don J. Barnes, an engineer, he made a survey of the proposed line, and secured from the local farmers

and residents around Weaverville deeds to a part of the proposed right of way, which were furnished, or were to be furnished, without expense to him, as is provided by the bond of certain citizens of Weaverville hereinafter described and given in furtherance of his scheme to build the road. Having no funds of his own with which to finance his scheme, and being desirous of making, as a part of his proposed line, a short line of street railroad known as the Intermountain Railroad, then in operation in the City of Asheville, for the purpose of financing and effecting the construction of his proposed road, on February 10, 1900, in Chicago, Wilford and Barnes met E. R. Bliss, appellee, and had prepared and signed and sealed by the said three parties a contract which in substance provides, that Wilford and Barnes on their part would procure proper authority from the said municipalities, and from the said County of Buncombe for the construction and operation of said road and the necessary right of way, and also would obtain title to certain water power, known as Baird's falls, along the proposed line with the right to build a dam, and would obtain a release from the property owners affected of all claims for damages caused by overflow, and would secure by agreement or otherwise a promise or guarantee by the Town of Weaverville to pay in money or bonds the sum of ten thousand dollars when said railway should be constructed to said town; that said deeds and contracts should be made to and deposited with Charles J. B. Kressman, cashier of the Garden City Banking & Trust Company of Chicago, and be held by him until the completion of the organization of a company to be known as the Asheville and Weaverville Electric Railway and Power Company, and until such time as the trust deed and bonds contemplated to be issued by the proposed company were executed, at which time Kressman was to convey to the organized corporation.

Bliss agreed in this contract that if upon personal

inspection he was satisfied with said street railway, he would buy it if it could be bought for not exceeding $20,000. All parties then agreed that in the event of such purchase of the street railway by Bliss, it, with all the other property agreements and other contracts referred to, should become the property of the corporation, and that the amount of the capital stock of said company should be agreed upon, and that all the property should be mortgaged to secure an issue of bonds to be agreed on; that the capital stock should be divided into three equal parts and each of said parties have an equal share thereof; that each party should be paid all money advanced for such scheme and six per cent. interest, and that Wilford should receive $5,000 in bonds of the company at par for the promotion thereof; that all gifts, bonuses and donations given to any of said parties for said construction should be assigned to and become the property of said corporation; that the agreement should be wholly dependent upon the purchasing of said railway by Bliss, and that the purchase thereof is optional with him; that if he should elect to purchase the road, Wilford and Barnes should perform their said part of the contract within thirty days from the purchase of said electric road, and in case they failed to perform their agreement in the thirty days, the said street railway should become the sole property of Bliss, free and clear of any claim or demand by Wilford and Barnes.

Within a few days after the signing of said contract, Mr. Bliss went to Asheville, looked over the street railway property, and with his own money bought it for $16,000. About two months later Wilford and Barnes were unable to carry out, and had not carried out their agreement to secure right of way and necessary waivers of damages by the property owners to be affected by the construction of the proposed dam and water power. Mr. Bliss was then dissatisfied and desired to have nothing further to do with the proposed scheme and on April 21, 1900, had

a conference in Asheville with Wilford and Barnes and a Mr. Weaver, attorney for Mr. Wilford. Mr. Bliss offered to turn over to Mr. Wilford the said road at cost to him, and to quit the proposed scheme. In reply Mr. Wilford stated to Mr. Bliss that he had no money with which to buy the road. He also stated to Mr. Bliss that if he, Bliss, would return to Wilford the said bond signed by citizens of Weaverville, he, Wilford, would "step down and out" of the proposed scheme. Wilford's attorney then prepared the release in question, and on which this suit was brought, which was written at the foot of said contract signed by Wilford, Barnes and Bliss, and on the last page of said contract, just below their signatures thereto. Said release so signed is in the following words and figures, to wit:

"In consideration of the surrender to me of that certain instrument executed December 20, 1899, and signed by A. E. Roberts, W. E. Weaver and various other persons, purporting to be their several bonds together with all right, title and interest therein, by the within named E. R. Bliss and Don J. Barnes, I hereby transfer, assign and relinquish all right, title and interest in or to the within and foregoing contract and further hereby cancel and surrender the same.

Witness my hand and seal this 21st day of April, 1900.

"I. B. Wilford (Seal)."

The bond mentioned in said release was signed by about forty persons. Every voter in Weaverville, except four, and the mayor and at least a majority of the members of the board of trustees or aldermen of Weaverville, signed the bond in the sum of $10,000. The bond recites that I. B. Wilford for the Asheville and Weaverville Eectric Railway and Power Company agrees to grade, build, equip and operate a car line to be known as above, running from Asheville to Weaverville, and to accept as the obligors' part of the payment for said building and equipping ten thousand dollars in bonds secured and issued by authority of the

said town of Weaverville, said bonds to be made legal by a vote of the people of said town, to run for twenty years and to bear six per cent. interest; that the right of way from Asheville to Weaverville, and the franchise from the County Commissioners of Buncombe county, N. C., for fifty years, shall be secured to I. B. Wilford free of cost to him. The bond then provides that if said bonds voted by the town of Weaverville shall be declared legal and valid by authority of the next legislature, or when the bonds shall be valid and binding upon said town by reason of the vote of the people thereof and authorized by the legislature, and when said right of way and franchise are secured to said Wilford without cost to him, that then the bond of said forty persons should be void, otherwise to remain in force.

Within a month or two after the signing of said release by Mr. Wilford, Mr. Bliss sold the road in Asheville to the Asheville Street Railroad Company.

This suit was brought in March, 1904, by appellant against appellee on a parol agreement of appellee, alleged to have been made before the signing of said release and as part of the consideration for the making of said contract of release by appellant. The said oral contract of appellee, as alleged in the declaration, is, in substance, that appellee, Bliss, promised appellant that within a reasonable time after the signing of the release by appellant, he, appellee, would build or effect the construction of the said electric railway so that the said Weaverville bond delivered to appellant would become of value, and that appellant accepted said bond relying upon said oral agreement. The declaration then charges a breach of said oral agreement by appellee, and damages in the sum of $10,000 in consequence thereof.

At the close of appellant's testimony the jury found the issues for appellee upon a peremptory instruction of the court, and the legality of the court's instruction and judgment is challenged by appellant in this court.

B. F. LANGWORTHY, for appellant; C. STUART BEATTIE, of counsel.

GEORGE GILLETTE, for appellee.

MR. PRESIDING JUSTICE DUNCAN delivered the opinion of the court.

Upon the question of whether or not appellee made the oral promise in question before the signing of the contract of release by appellant, only two witnesses testified, appellant and his lawyer, Mr. Weaver. Appellant's testimony upon that point is as follows:

"Mr. Bliss said to have the attorney draw up what you want. My attorney started to draw up this agreement (the release), and my recollection is that before we got through drawing this agreement, he stopped and stated to Mr. Bliss, 'Now you must remember that if you don't guarantee to build this road in this time limit (two years) that this bond will be valueless to Wilford, will be of no value. You ought to give him a guaranty that you will build this road in the time limit in order to make this bond available, worth something.' Well, then Bliss jumped up and he run. Well, after Mr. Weaver made this remark to him, Col. Bliss says, 'Why haven't you all got no—I won't do that, because if I do I will be held up all along the line, people that have got rights of ways and separate locations and terminals and things will make me pay double or treble, will hold me up.' That is the language he used, 'and hence I won't do it,' he says, 'but haven't you fellows got any confidence in me?' He says, 'Wilford, you have been trying to drive a hard bargain with me all right,' he says, 'haven't you any respect for my honor?' I says, 'Colonel, if you will tell me that you will handle that road in the time limit, I have got nothing to say. I don't care what you do.' Well, Mr. Weaver finished up the articles and I signed it right there. * * * In reply to my

statement that if he would give his word that he would construct that road in the time limited, I would sign anything he wanted, Bliss stated, 'have your attorney draw up the transfer.' "

Mr. Weaver's testimony on that matter is as follows:

"I fully pointed out, as I thought my duty was, to Major Wilford, his situation, and Major Wilford then said, 'Yes, I ought to have some assurance that the road will be built,' and Col. Bliss said, 'Haven't I shown my faith in this matter by putting my money in,' and he said, 'If I sign a written contract of such a character as that and the people know it, why anything I want I would be held up about it.' * * * The matter was discussed then along that line for some little while and finally Major Wilford said, as I recall now, 'that is all right, Colonel Bliss, if you will tell me you will build that road I will sign that paper,' and I either had it completed or in a minute, and he (Wilford) signed it, and I turned the contract over to Major Bliss, and I presume the Weaverville bond was returned to Mr. Wilford, although I have no recollection about that, and we went out."

The foregoing evidence is not sufficient proof that Mr. Bliss made the alleged parole agreement. On the contrary it amounts to positive evidence that he refused to make such agreement. His plain declaration, in substance, was that he would not agree to build the road and that the building of it must be left merely to his honor without any agreement, oral or written, that he would build it. This is the strongest construction that can be made of the language used by Mr. Bliss, and it falls far short of proving the agreement alleged.

We are also of the opinion that appellee's objection to this evidence, that it was inadmissible under the rule that parole evidence is not admissible to vary or enlarge the terms of an unambiguous written contract, should be sustained. It is a well established rule that, in the absence of fraud or mistake, proof of

antecedent or contemporaneous verbal agreements between contracting parties cannot be received to alter or control their unambiguous written agreement. Jackowski v. Illinois Steel Co., 103 Wis. 448; Schneider v. Sulzer, 212 Ill. 87; Telluride Power Trans. Co. v. Crane Co., 208 Ill. 218.

The test of the completeness of the writing is the writing itself. Clark v. Mallory, 185 Ill. 227. The contract in question is unambiguous and appears to be clearly and fully expressed by the writing in all its terms. It is a contract, in substance, by which appellant relinquishes all right, title and interest in said original contract and surrenders the same to Bliss and Barnes in consideration that they shall surrender to appellant the said bond and release all their right, title and interest therein to appellant. The consideration expressed is more than a mere statement of fact or acknowledgment of payment of a money consideration, and is in its nature contractual. It purports to be a contract, in substance, that Wilford is thereby doing an act in consideration that Bliss and Barnes have done or will do another act. It purports, in other words, to state all things to be done by both parties in the writing. The rule therefore applicable in case of the mere recital of money considerations and receipts thereof in deeds of conveyance do not apply to the contract in question. Ludeke v. Sutherland, 87 Ill. 481 and Kimball v. Walker, 30 Ill. 482, in which the reason for the rule in the case of deeds is set forth; and see also Jackson v. Railway Co., 54 Mo. App. 636; Purinton v. Northern Illinois R. Co., 46 Ill. 297; Cassilly v. Cassilly, 57 Ohio St. 582; Jackowski v. Illinois Steel Co., 103 Wis. 448; Milich v. Armour Packing Co., 60 Kan. 229; 17 Cyc. 659, 661, in which cases it is shown when the written consideration is more than mere recitals of money considerations and payments and therefore inalterable by parole evidence.

It follows from the foregoing that our conclusion

must be that the court properly directed a verdict in this case, and it will not be necessary to consider the other questions raised on this record as to the invalidity of the bond of the citizens of Weaverville, and the right of appellee to make such a defense in this case.

The judgment is, therefore, affirmed.

*Judgment affirmed.*