(No. 19447.—

GEORGE A. STURDYVIN, Appellant, *vs.* PATRICK WARD *et al.*
Appellees.

*Opinion filed October 19, 1929—Rehearing denied Dec. 5, 1929.*

B. L. KIRK, (GREEN & PALMER, HENRY I. GREEN, and ORIS BARTH, of counsel,) for appellant.

SCHAEFER & DOLAN, and DOBBINS & DOBBINS, for appellees.

Mr. COMMISSIONER PARTLOW reported this opinion:

Appellant, George A. Sturdyvin, as trustee in bankruptcy of Charles T. Birch, filed his bill for partition and relief in the circuit court of Champaign county against Birch, the bankrupt, Margaret Birch, his wife, Genevieve Birch, his daughter, Patrick Ward, his father-in-law, the First National Bank of Rantoul and Thomas C. Jackson, judgment creditors, and the Trevett-Mattis Banking Company and the Mutual Benefit Life Insurance Company, mortgagees. The bill alleged that Birch was the owner of 80 acres of land and that he and Ward were the owners of 240 acres of land, all in Champaign county; that one piece was subject to a mortgage to the Mutual Benefit Life Insurance Company for $15,500, dated January 26, 1923,

executed by Ward and Birch; that another piece was subject to a mortgage to the Trevett-Mattis Banking Company for $12,000, dated February 14, 1924, executed by Ward and Birch; that the claims of the two judgment creditors were avoided by the bankruptcy proceeding; that Genevieve Birch has been in possession of all of the lands as tenant under a lease which expired March 1, 1928, but that she remained in possession and was indebted for the 1927 rent; that all of the mortgage indebtedness was incurred jointly by Birch and Ward and was the equal obligation of both as principals but that Ward claimed that the entire amount was the indebtedness of Birch, and that by reason of this claim the title was clouded and depreciated. The prayer was for a partition of the premises held in joint tenancy, that the court adjudicate the controverted question of priority between the bankrupt estate and Ward, and that the claims of Ward be removed as clouds on the title. The judgment creditors made default and the mortgagees answered, setting up their mortgages. Genevieve Birch answered, admitting possession as a tenant and averring her readiness to account for rent due to the party entitled thereto. Margaret Birch answered, alleging that she had a right of dower in all of the lands and a homestead in one piece. The bankrupt answered, setting up his homestead. Patrick Ward answered, alleging that he and Birch owned one quarter section and half of the other as tenants in common; that the entire mortgage debt on each was the individual debt of Birch and that Ward joined in the notes and mortgages merely as surety; that Birch's interest was burdened with the mortgage debt, and Ward was entitled to have the entire interest of Birch applied to the payment of the mortgage before any part of Ward's interest was applied on the same; that by reason of the provisions of the mortgages and in order to prevent foreclosure thereof after Birch had failed to pay interest and taxes Ward was compelled to pay certain interest and taxes, and he prayed

for subrogation to the rights of the mortgagees against the interest of appellant; that Birch in his bankruptcy schedules admitted that the mortgage debts were his own and that Ward received no part thereof, and that appellant had collected certain rent which he had failed to apply to delinquent mortgage interest and taxes. Upon issue being joined the cause was referred to a master to take the evidence and report his conclusions of law and fact. The master recommended a decree substantially as alleged in the answers. Exceptions were overruled and a decree was entered which found that the total amount of the mortgages was a lien upon Birch's interest and that all of his interest must be used to satisfy the mortgage indebtedness before the same could be charged against any portion of the interest of Ward; that Birch's interest in the land must be held accountable for the interest and taxes paid by Ward, and that the land, or the proceeds derived from the sale thereof, was subjected to the inchoate right of dower of Margaret Birch. From the decree entered this appeal was prosecuted.

Two questions are argued by appellant on this appeal: First, whether the evidence shows that Ward was only a surety for Birch; and second, if he was a surety, whether he was entitled to the relief granted by the decree. There is no question raised as to the ownership of the land, or as to the two mortgages and the amounts due thereon, or that Birch occupied part of the lands as his homestead, or that his daughter occupied the lands as a tenant.

In chief, in support of the allegations of the bill, appellant, his solicitor and Birch testified, and the deeds and mortgages were introduced in evidence. None of these witnesses testify to any facts relative to the suretyship of Ward, therefore the only evidence offered by appellant on that question consisted of the mortgages and the deeds. The presumption of law arising therefrom is, that where

two or more persons are the owners of land as tenants in common they are equal owners thereof.

In support of the allegations of the answers, Charles T. Birch, his brother, William H. Birch, and his brother-in-law, William Joyce, testified, and certain deeds and documents were admitted in evidence. The evidence shows that Ward was eighty-four or eighty-five years of age. He had been blind for six or seven years, and evidence was offered tending to show that his memory was not very good. Birch had looked after most of his business, and for a year or two had received and used for his own benefit all of the rents from this land. For six or seven years Ward had lived in the Birch family but at the time of the trial he was with relatives in Wisconsin. On October 27, 1906, Joseph D. Jackson conveyed to Birch and Ward the east half of the northeast quarter of section 21 for a stated consideration of $10,000. On November 12, 1914, Thomas Birch conveyed to Charles T. Birch the west half of the northeast quarter of section 21 for a consideration of $9000. On this land Birch and his family resided. On February 23, 1924, Peter Seeber conveyed to Birch and Ward the southeast quarter of section 10 for a consideration of $21,200. This was known as the Bok farm. All of this land is in township 22 north, range 9 east of the third principal meridian, in Champaign county.

Prior to March 1, 1924, Birch and Ward were the owners of 308 acres of land in Moultrie county, Illinois, which they sold to William H. Birch for $58,520, subject to mortgages of $25,000. Charles T. Birch testified that in payment for this land his brother deeded him a farm of 200 acres in Franklin county for a stated consideration of $14,000 and subject to a mortgage of $7000; that the brother paid a check of $4000 drawn by Birch on the First National Bank of Sullivan; that the brother paid $8052.45 in cash and gave his note for the balance, which note was

subsequently paid. The proceeds of the sale of this real estate belonged equally to Birch and Ward, and one of the questions in this case is as to the disposition of about $23,000 in cash received from this sale by Birch. The only evidence as to its disposition is the testimony of Birch. It is apparent from the evidence that Birch conducted this transaction, collected the money, and Ward had very little, if anything, to do with it. Birch testified that no part of the money was paid to Ward; that about $10,000 was applied by Birch upon the purchase price of the southeast quarter of section 10, the balance was used by him in payment of his personal obligations, including about $6400 to the First National Bank of Rantoul, of which William H. Wheat was president, and about $1800 to Thomas C. Jackson, who was a judgment creditor, and that Ward received no part of it, except the interest in the southeast quarter of section 10, one-half of which was conveyed to him. On the trial counsel for Ward submitted to counsel for appellant checks amounting to $14,000 drawn by Birch on this fund for his personal use, the most of which went to Wheat and Jackson. Birch also testified that the balance of the purchase price of the southeast quarter of section 10 was procured from the $12,000 mortgage of February 14, 1924, to the Trevett-Mattis Banking Company, which was on the southeast quarter of section 10. The share of Ward in the proceeds of sale of the Moultrie county farm was more than sufficient to pay for one-half of the land in section 10. The mortgage to the Mutual Benefit Life Insurance Company was dated January 26, 1923, was for $15,500 and was on the northeast quarter of section 21. Birch testified that out of this $15,500, $9500 was paid on a former mortgage of $12,000 upon the same premises and $6000 was used by him in the payment of his personal obligations; that the prior mortgage of $12,000 was put upon these premises about 1915 or 1916 by Ward and Birch, and

that it was for the benefit of Birch and that Ward did not receive any part of it.

On cross-examination Birch was asked if he did not testify before the referee in bankruptcy that he put $10,600 into the purchase of the Bok farm. He answered that he did not remember. The record of his evidence before the referee was admitted to show that he did so testify. At the close of the evidence on behalf of appellees, appellant, in rebuttal, called Birch as a witness and had him identify a written statement dated February 1, 1926, purporting to have been given by him to the First National Bank of Rantoul as a basis for credit. Birch testified that the statement was not genuine; that there were certain matters in it which were not there when he signed it; that at the time it was made, William H. Wheat, the president of the bank, took down some figures on a piece of paper which was not the paper offered in evidence; that at the time he signed the paper there were no figures on it and that nothing was on it except the printed matter. For the purpose of contradicting Birch in this respect, Wheat testified that on February 1, 1926, Birch, for the purpose of obtaining credit from the bank, made a property statement; that the facts were stated by Birch and that Wheat put them down on a piece of paper and the document was later signed by Birch. In this statement the Bok land was valued at $21,120, was encumbered for $12,000, and the equity of Birch was $4560. The home place was valued at $24,000, with a mortgage of $11,625, and an equity in Birch of $12,375. It is insisted by appellees that it was error to place Birch on the stand as a witness for appellant in rebuttal and then attempt to impeach him by Wheat, and that Wheat's testimony as to the statements of Birch was hearsay and not binding on Ward. There is merit in a part of this contention, but no good purpose would be served by considering it in detail, for the reason that it is not necessary in the determination of the facts in evidence.

Where a conveyance is made to two or more parties without designating the portion which each is to take, the law presumes that they are to take equal shares and they will be considered tenants in common with equal interests. (*Keuper* v. *Mette,* 239 Ill. 586.) This presumption is not, however, evidence in itself but is a mere legal conclusion from facts proven, which may be rebutted by evidence. Presumptions are never indulged in against established facts. They are indulged in only to supply the place of facts. As soon as evidence is produced which is contrary to the presumption which arose before the contrary proof was offered the presumption must give way to the facts. (*Osborne* v. *Osborne,* 325 Ill. 229.) Substantially the only evidence of appellant's claim that the mortgages were the equal liability of Birch and Ward comes from the deeds and the mortgages. From them the legal presumption arose that the interests were equal. This presumption continued until evidence of facts proved the contrary. Birch testified that Ward was a surety. His evidence is not contradicted except by some conflicting statement he is claimed to have made. There are other facts and circumstances in evidence which show that Birch had full charge of Ward's affairs; that Ward was in no position to conduct his own affairs; that Birch not only mortgaged Ward's land but used the rents and profits for his own use. We cannot say that the evidence does not sustain the conclusion that Ward executed these mortgages as a surety.

It is insisted by appellant that even though Ward executed the mortgages as security for Birch, who received all of the proceeds, the claim of Ward is not superior to the claim of appellant. In support of this contention it is claimed by appellant that under section 47, clause 2, subsection (*a*) of the amendment of 1910 to the Bankruptcy act, appellant, as trustee of all property which came into the custody of the bankruptcy court, was vested with all the rights, remedies and powers of a creditor holding a

lien by legal or equitable proceedings thereunder. It is admitted by appellees that under the amendment of 1910 appellant was vested with all of the rights, remedies and powers of a creditor holding a lien by equitable or legal proceedings thereunder, but it is claimed by appellees that under the facts in evidence the amendment does not give appellant a superior claim over Ward.

There is nothing in the amendment or in any of the decisions cited by appellant in support of his contention that gives a trustee in bankruptcy any greater right than a judgment creditor would have. It has been held that a trustee in bankruptcy takes the property of the bankrupt not as an innocent purchaser but as the debtor had it at the time of the petition, subject to all valid claims, liens and equities. (*Hopkins* v. *National Shawmut Bank,* 293 Fed. 884; *Gadd* v. *Dawson,* 291 id. 331; *In re Seward Dredging Co.* 242 id. 225.) In *Pick & Co.* v. *Wilson,* 19 Fed. (2d series,) 18, it was said with reference to this amendment: "The better view would seem to be that the amendment was designed to reach to those cases in which no creditor had acquired such a lien and to give the trustees, for the benefit of the estate, the potential rights of creditors with such liens. The language is broad and all-inclusive, and would seem to refer to such rights, remedies and powers as a creditor holding a lien would have under the law of the particular State, rather than to the rights, remedies and powers of a creditor who has actually fastened a lien upon the bankrupt's property. In other words, the amendment arms the trustee with process to the same extent that any judgment creditor would have according to the law of the particular State, and he is not necessarily concluded by an instrument or agreement which might have been good against the bankrupt had bankruptcy not intervened."

The lien of an ordinary judgment is general and extends only to the property right which the debtor owns in the premises, subject to the equities in it at the time of the

judgment. It is limited to the actual interest of the judgment debtor. (*East St. Louis Lumber Co.* v. *Schnipper,* 310 Ill. 150; *Yarnell* v. *Brown,* 170 id. 362.) Unless the judgment creditor is able to point to some statute specifically giving him a right to a greater interest than that which the judgment debtor actually owns, he is limited to that right. In *Hooper* v. *Haas,* 332 Ill. 561, it was held that section 30 of the Conveyance act, which provides that deeds, mortgages and other instruments in writing which are authorized to be recorded shall take effect and be in force from and after the time of filing the same for record, and not before, as to all creditors and subsequent purchasers without notice, is intended to apply only to such equities arising against the interest of judgment debtors as are evidenced by instruments required to be recorded. In *Robbins-Sanford Mercantile Co.* v. *Johnson,* 166 Ark. 337, 37 A. L. R. 1252, the facts were substantially the same as those in the present case. It was held that a party obtaining a judgment against one tenant in common acquires no preference over prior equities in common property, and that where one tenant in common joins in a mortgage of the common property to secure a debt of the co-tenant, his equitable lien as surety for the co-tenant will prevail over the lien of a judgment subsequently secured by a third person against such co-tenant.

In *Swift & Co.* v. *Kortrecht,* 112 Fed. 709, the property of the wife had been included in a trust deed as security for the debt of her husband and the decree provided that his property should be sold first. The court said: "But she was only a surety in respect to this deed of her own land. (See Brandt Sur. 22, and the cases cited in note.) The question, therefore, is whether Swift & Co., who are creditors, are entitled in equity to require the bank to exhaust her property in order to exonerate the land on which they have acquired a judgment lien. We think not. It is axiomatic that sureties are favored in equity,—that is to

say, so far as they may be without impairing the obligations which they have undertaken. It cannot be doubted that as between Kortrecht and his wife the bank would be required to exhaust the property belonging to him before subjecting her property to sale. The creditors of the husband have no greater right than he. They cannot appropriate an equity which is due from him to another by acquiring a judgment lien upon his equities. They gain only his position." In Brandt on Sureties, cited in the above case, it is stated: "Where principal and surety have both mortgaged property for the debt of the principal, the surety is entitled to have the property of the principal sold first to satisfy the debt."

If Ward was merely a surety for Birch as between themselves, Ward would have a right to have the property of Birch first subjected to the payment of the entire mortgage debt. Ward had that right at the time the bankruptcy proceedings were instituted. Ward and Birch, personally and through their tenant, were in possession at all times. The deeds to them were on record as well as the mortgages, and there was no fraud or concealment with reference to their rights, therefore any person acquiring title to the property was chargeable with notice of such rights. Birch, in his schedules filed in the bankruptcy proceeding, stated that both mortgages were his debts and that Ward was a mere surety. When he was examined in the bankruptcy proceedings by the attorneys for the creditors, who are now representing appellant in this case, Birch testified that in 1926, which was a year before the bankruptcy proceedings were instituted, he told Wheat, the president of the First National Bank of Rantoul and one of the principal creditors instrumental in beginning this suit, that Ward was a surety on both of these mortgages and the mortgages were the debts of Birch. Wheat did not deny this, and therefore he, as one of the principal creditors, had notice of the equities between Ward and Birch a year before the bankruptcy

proceedings were started. This admission of Birch prior to the transfer of his interests to the trustee in bankruptcy constituted evidence against his assignee or grantee. (*Bald v. Nuernberger,* 267 Ill. 616; *Gage* v. *Eddy,* 179 id. 492.) This rule has been applied to admissions of a bankrupt as against his trustee, the admissions being made only a short time before his adjudication. *In re Thompson,* 205 Fed. 556.

Appellant insists that the equitable rights of a surety to exoneration cannot arise until the mortgage debt becomes due and the principal debtor has failed, neglected or refused to make payment; that it is not until then that the surety has any right to file a bill in equity to compel payment by the principal or satisfaction out of his property; that before that date Birch had become a bankrupt and the superior title of his trustee in bankruptcy had fastened upon the property. Many cases are cited to establish this rule. These authorities are not applicable to the facts in this case. In the present case Birch had defaulted in payment of interest and taxes, rendering the mortgage due at the option of the mortgagee. He had been adjudicated a voluntary bankrupt, thus requiring the mortgagees to collect the debt out of the mortgaged real estate or from the solvent surety. If the mortgagees could have enforced payment and neglected or refused to do so, Ward would have had the right to file a bill for exoneration. In Pomeroy's Equity Jurisprudence (vol. 4, 3d ed. p. 2793,) it is stated that the doctrine in such cases rests upon the simple right, as between the principal and surety, that the surety has to be protected by the principal. The form in which that protection may be secured is not material where the right to it exists and can be had without prejudice to the creditor. Ward did not voluntarily go into court and ask exoneration. This is not a suit by Ward for exoneration. He was brought into court by appellant upon a bill filed which sought to set aside any rights which he might have against

Birch or appellant. He certainly had a right to defend himself when his rights were attacked. Appellant is in no position to claim that the suit was prematurely brought.

Appellant contends that if the basis of the right of exoneration is specific performance of an express or implied contract created at the time the suretyship relation was entered into, the contract is unenforcible as against the trustee in bankruptcy because of the failure to comply with the recording laws. This contention is based on section 30 of the Conveyance act. The authorities cited dispose of this contention contrary to the claim of appellant.

Under the facts in evidence the decree was correct, and it will be affirmed.

Per Curiam: The foregoing opinion reported by Mr. Commissioner Partlow is hereby adopted as the opinion of the court, and judgment is entered in accordance therewith.

*Decree affirmed.*