## GARRETT v. ELLISON.

No. 5831. Decided October 13, 1937. (72 P. [2d] 449.)

*Will L. Hoyt,* of Nephi, and *A. E. Bowen,* of Salt Lake City, for appellant.

*P. N. Anderson,* of Nephi, and *Lewis Larson,* of Manti, for respondent.

LARSON, Justice.

This action, an appeal from the district court of Juab county, has changed its color, disposition, and character since it was commenced. Many of the parties have been eliminated, the res has changed its character, and the relief sought and the purpose for which the litigation exists, are different. Many of the assignments of error are now moot and the questions remaining for consideration are limited. We shall, therefore, state the facts only as they are now pertinent and not involve the record with matters heretofore eliminated.

In September, 1932, there was recorded in the office of the county recorder of Juab county a certain mortgage dated in July previous, signed by three persons named Bracken, in favor of "Alice B. Garrett and LaVern Ellison, joint

mortgagees, with right of survivorship" covering certain lands in Juab county and given to secure a promissory note for $5,091.25 due October 1, 1935, payable "to the order of Alice B. Garrett or LaVern Ellison." The note uses the disjunctive *or* instead of the conjunctive *and* of the mortgage, and says nothing about *right of survivorship*. Alice B. Garrett mentioned in the note and mortgage is the appealing plaintiff and LaVern Ellison is the defendant in this action. In October, 1933, Alice B. Garrett made of record a release of the aforesaid mortgage, took a new note from the same parties, for the same amount, due the same date, secured by a new mortgage on the same lands, both note and mortgage being made in favor of "Alice B. Garrett" without any mention of La Vern Ellison. This second mortgage was duly recorded in 1934. Brackens, the mortgagors, sought to refinance the loan through the Federal Land Bank. The Land Bank required a release of the first mortgage by La Vern Ellison. She refused to execute a release, and Mrs. Garrett and the Brackens then brought suit to compel Mrs. Ellison to release the mortgage and have the court declare the same paid, and that Mrs. Ellison had no interest in the lands. Defendant answered setting up the foregoing facts and claiming a half interest in the note and mortgage, as a "joint owner" thereof. Plaintiffs replied, denying defendant's claims, and during trial sought to amend their complaint and reply by pleading that all the consideration for the first note and mortgage was furnished by Mrs. Garrett, and that Mrs. Ellison's name was inserted as one of the payees upon an oral understanding and agreement, that Mrs. Ellison had no pecuniary interest in the note and mortgage, but, in the event of Mrs. Garrett's death Mrs. Ellison was to collect said note as trustee for the benefit of the heirs of Mrs. Garrett. The court refused to permit the amendment, and also refused to permit plaintiffs to offer evidence of such matters on the ground that such evidence would violate the parol evidence rule by permitting plaintiffs to contradict the terms of the written mortgage by parol.

While the cause was pending in the district court, but after hearing was completed, Mrs. Garrett and Mrs. Ellison, the parties on this appeal, stipulated that the mortgage be released, and that the Federal Land Bank bonds be deposited with the clerk to abide the event of the action as between Mrs. Garrett and Mrs. Ellison. The trial court entered judgment in favor of Mrs. Ellison, defendant, and Mrs. Garrett, plaintiff, prosecutes this appeal. The issue now is as to whether Mrs. Ellison is entitled to one-half of the bonds on deposit, or whether Mrs. Garrett should be permitted to show by parol that La Vern Ellison had no beneficial interest in the note and mortgage. There are but two questions for us to decide: (1) Was the evidence plaintiff offered, to prove that La Vern Ellison had no pecuniary interest in the note and mortgage, incompetent as a violation of the parol evidence rule? (2) Was the court in error in sustaining the objection to plaintiff's proposed amendments to her complaint and reply? We will discuss them in order.

1. The parol evidence rule, while simple to state, is often confusing in its aplications, due largely to misunderstanding of its purposes; that is, attempting to apply a rule rather than a reason. The rule, so-called, may be stated thus: Parol evidence is inadmissible to vary, alter, control, or contradict the terms of a written instrument, *in an action founded upon such writing, between the parties or privies thereto. Moyle* v. *Congregational Soc. of Salt Lake City,* 16 Utah 69, 50 P. 806; *Smith* v. *Moynihan,* 44 Cal. 53; *Hussman* v. *Wilkie,* 50 Cal. 250; 5 Chamberlayne, Mod. Law of Ev. p. 4906. Of course, the rule, even as between the parties to the instrument, does not foreclose all parol evidence, but only such as would change or vary or contradict the terms of the writing, when such terms are clear and definite. And the rule only applies to those elements or parts of the writing which are contractual between the parties and not merely recitals of fact. *Wilford* v. *Bliss,* 174 Ill. App. 28; *Gill* v. *Ruggles,* 97 S. C. 278, 81 S. E. 519; *Komp* v. *Raymond,* 175 N. Y. 102, 67 N. E. 113. A rule has

been established that an agreement by parol which is collateral to the written contract and on a distinct subject may be proved. To lay down, in advance, a distinct formula that will determine by "rule of thumb" what cases come within it, is difficult. *Sun Printing & Pub. Ass'n* v. *Edwards,* 113 F. 445, 51 C. C. A. 279; *Durkin* v. *Cobleigh,* 156 Mass. 108, 30 N. E. 474, 17 L. R. A. 270, 32 Am. St. Rep. 436. But we need not enter into a discussion of the varied application of the rule, or seeming exceptions to it. The rule is founded upon the principle that when the parties have discussed and agreed upon their obligations to each other, and reduced those terms to writing, that such terms, if clear and unambiguous, furnish better and more definite evidence of what was undertaken by each party than the too often fickle memory of man, for why else reduce it to writing. The rule applies to exclude extrinsic utterances, when it is sought to use those utterances for the purpose for which the writing was made and has superseded them as the legal act. This action, as it now stands, between Mrs. Garrett and Mrs. Ellison, is not founded or predicated upon a written contract. The instruments involved in this action (the note and mortgage) are contracts between Mrs. Garrett and Mrs. Ellison on the one side, and the Brackens on the other. It was written to evidence the obligation of the Brackens to the payees and fix the terms of the contract as between the payors and payees. Those terms are manifest from the instruments and may not be varied by parol. But neither of the instruments assume to show, or be, a contract or agreement between Mrs. Garrett and Mrs. Ellison. The writings fix no obligation on either party, they impose no liability or confer no right on one as against the other. They authorize the Brackens to make payment to either of the payees, but they nowhere attempt to define the rights of the payees, one to another. The trial court took the view that the mortgage estopped every one to dispute the recitals therein. The contractual terms of the mortgage estop the parties thereto, but they do not form the

contract and are not covenants between the parties to the obligation on one side. *Sprague* v. *Beamer,* 45 Ill. App. 17. They are not conclusive of the facts recited, as between them. In *Barry* v. *Ranson,* 12 N. Y. (2 Kern.) 462, it was held that the rule was limited to the parties actually contracting with each other by the written instrument; that although, in the absence of evidence, all persons becoming sureties for a common principal are liable to contribution, still one of the sureties may prove, by parol, that another surety promised to indemnify him from loss, and that such evidence does not contradict or vary the terms or legal effects of the written obligation. *Thomas* v. *Truscott,* 53 Barb. (N. Y.) 200. And in *Lee* v. *Adsit,* 37 N. Y. 78, 89, 95, it is said:

"The rule that parol extrinsic evidence shall not be received to contradict or vary a contract which is in writing, applies only in controversies between the parties, promissor and promissee, in such contract. * * * Neither are the terms of a written contract conclusive as to the shares or proportions in which a set of parties on one side of the contract are interested in its fruits as between themselves. Such questions do not usually enter into the consideration of those who settle the forms of written contracts. Each party, in framing the contract, considers only what by its terms he may exact from the other, and what the latter may thereby exact from him. The parties of the first part in a contract may have no joint or mutual interest in the subject-matter; one may be merely the agent, clerk or servant of the other; yet the paper would warrant, prima facie, the supposal of an equal interest. In an action on the contract against the other party, no question of this sort can arise. But, surely, in a controversy between the parties of the first part, the paper is not conclusive and irrefragable evidence of a mutual and equal interest in the benefits of the contract." *Burrows* v. *Turner,* 24 Wend. (N. Y.) 276, 35 Am. Dec. 622; *Catlett* v. *Pacific Ins. Co.,* 1 Wend. (N. Y.) 561; 2 Duer on Insurance p. 30; 22 C. J. p. 1244; also p. 1185; *Caine* v. *Hagenbarth,* 37 Utah 69, 106 P. 945.

An exhaustive discussion of this rule is found in *Rymer* v. *South Penn Oil Co.,* 54 W. Va. 530, 46 S. E. 559, and many authorities review. Where it is not provided how the consideration paid by one party to a contract is to be applied, or how it shall be divided between or among those entitled

to receive it, parol evidence is admissible to explain that which is not expressed. The rule is thus stated in 22 C. J. p. 1294:

"The rule excluding parol evidence to vary a writing has been held not applicable in a controversy between parties in the instrument whose interests thereunder are the same, or their privies, as in the case of contests between grantors, grantees coobligors, or coobligees, or between privies of parties on the same side."

The note, the subject of this controversy, as heretofore indicated simply designated two payees, to either of which payment could be made.

"Such a note raises the presumption of a joint ownership and of a coequal interest in them, but this does not preclude proof that their interests were separate and unequal." 8 C. J. 177, § 302; *Tisdale* v. *Maxwell,* 58 Ala. 40.

Where a conveyance is made in the names of a number of parties to an instrument, and the conveyance does not show respective interests, the presumption is that they own in equal shares, but such presumption is rebuttable by parol evidence. *Lowell* v. *Lowell,* 185 Iowa 508, 170 N. W. 811; *Hill* v. *Reiner,* 167 Mich. 400, 132 N. W. 1031; *Sturdyvin* v. *Ward,* 336 Ill. 594, 168 N. E. 666, 669; *Osborne* v. *Osborne,* 325 Ill. 229, 156 N. E. 306; *Jackson* v. *Moore,* 94 App. Div. 504, 87 N. Y. S. 1101; *Perrin* v. *Harrington,* 146 App. Div. 292, 130 N. Y. S. 944; *Jackson* v. *Jackson,* (Tex. Civ. App. 1924) 258 S. W. 231; *In re McConnell* (D. C.) 197 F. 438.

The following case shows that parol and extrinsic evidence is admissible to prove the respective shares where two or more grantees or obligees are named in an instrument; *Lowell* v. *Lowell,* 185 Iowa 508, 170 N. W. 811. This case holds that, where a conveyance is made to purchasers of a tenancy in common in the names of all and the conveyance does not show the respective interest of each, the presumption is that they own equal shares, but such presumption is rebuttable.

The courts say where the instrument is silent as to the respective shares of the grantees they are presumed to be equal, but the presumption is rebuttable. *Sturdyvin* v. *Ward,* supra. This was an action by a trustee in bankruptcy for a partition of the debtor's property and to quiet title against the claims of one Ward. The debtor and Ward were admittedly joint tenants in certain property. Mortgages had been executed by them both upon this property. Ward claimed that the debt was entirely the obligation of the debtor and that he was merely the debtor's surety, having received none of the proceeds of the mortgages. This he testified to on the trial. Plaintiff introduced in evidence the mortgages executed by the debtor and Ward and also the deeds running to them in their joint names. The court entered judgment according to the prayer of Ward's answer. Held proper. The court says:

"Where a conveyance is made to two or more parties without designating the portion which each is to take, the law presumes that they are to take equal shares, and they will be considered tenants in common with equal interests. * * * This presumption is not, however, evidence in itself but is a mere legal conclusion from facts proven, which may be rebutted by evidence. Presumptions are never indulged in against established facts. They are indulged in only to supply the place of facts. As soon as evidence is produced which is contrary to the presumption which arose before the contrary proof was offered, the presumption must give way to the facts."

And, where an instrument of legal effect is made in the names of several parties, but does not indicate their several interests, such interests may be shown by parol. *In re McConnell* (D. C.) 197 F. 438; *Osborne* v. *Osborne,* 325 Ill. 229, 156 N. E. 306; *Lowell* v. *Lowell,* 185 Iowa 508, 170 N. W. 811; *Jackson* v. *Moore,* 94 App. Div. 504, 87 N. Y. S. 1101; *Hill* v. *Reiner,* 167 Mich. 400, 132 N. W. 1031; *Perrin* v. *Harrington,* 146 App. Div. 292, 130 N. Y. S. 944.

It follows therefore that, since this action is not one to enforce contractual obligations of the written instrument, the clause making Mrs. Garrett and Mrs. Ellison joint payees

in the note being a mere recital and not a contractual term between the parties to the contract, and appellant and respondent were parties of the same part in the instrument, the evidence offered to show their respective interest as between themselves was not varying or contradicting the terms of the written instrument, and the trial court was in error in his rulings thereon.

2. This brings us to a consideration of the second question, Did the court err in refusing to allow plaintiffs to amend their complaint and reply?

Plaintiffs' complaint was in two causes of action, both equitable in their nature. The first was a simple form action to quiet title to the land in the Brackens, subject only to the second mortgage (the one made to Mrs. Garrett alone). The second cause of action was to compel Mrs. Ellison to release of record the first or "joint" mortgage. By answer, defendant denied most of the essential allegations of the complaint, and as affirmative defense set up the two mortgages, and alleged that Mrs. Garrett was attempting to convert to her own use defendant's interest in the first note and mortgage, and to cheat and defraud defendant. She asked for no relief except the dismissal of the complaint and her costs. For reply, plaintiffs denied that La Vern Ellison had any interest in the note and mortgage, and denied any intent to cheat or defraud her. The amendments proposed at the trial, to the complaint and reply, were framed and designed to put in issue the relative interests or rights of Mrs. Garrett and Mrs. Ellison in the moneys due from the Brackens, after counsel for defendant, Mrs. Ellison, had repeatedly insisted by objections to evidence that there was no real dispute between defendant and the Brackens, but the real dispute was as to La Vern Ellison's right to one-half of the money as a joint payee in the first note. The court, by its rulings, apparently also took that point of view. Plaintiffs then sought to amend the pleadings to directly raise and try that issue. Defendant's objection was not made upon the ground that the application was not timely, or would

prejudice her rights or defense, but upon the ground that the issues thus presented raised only questions which would be proved by parol evidence, and would therefore be incompetent under the parol evidence rule as varying by parol the terms of a written contract, the joint mortgage. We have already held that such evidence would not come within the inhibitions of the parol evidence rule. So the objection made was not well taken, and the refusal of the court upon that ground to permit the amendment was error.

After the court had refused to permit the amendment of the pleadings to present the issue as to the relative rights of the joint payees in the note to the proceeds thereof, as not properly involved in the action, and excluded evidence as to the matter as incompetent, the court proceeded to make findings of fact and judgment determining the ▮ rights of the parties therein, and adjudging that La Vern Ellison, respondent, was the owner of a half interest therein. Such findings and judgment therefore cannot stand.

The judgment of the trial court is reversed, and the cause remanded to the district court of Juab county with directions to grant a new trial and to permit the parties to amend their pleading to properly present the issues now existing between appellant and respondent, and further proceed in accordance herewith. Costs to appellant.

FOLLAND, C. J., and HANSON and MOFFAT, JJ., concur.

WOLFE, Justice (concurring).

I concur in the holding that the parol evidence rule does not apply in this case as to a determination of the real interests of Mrs. Garrett and La Vern Ellison in the note secured by the mortgage. The matter becomes more clear to me as I cogitate on the reason why Mrs. Garrett should have joined as a plaintiff. The Brackens owned the land. Mrs. Garrett had released but not Ellison. Therefore, Brackens, the owners and mortgagors under the new mortgage, were

the ones interested in clearing the title as against Ellison, not Mrs. Garrett. She was interested in knowing whether as the sole named mortgagee under the new mortgage she was part owner with Ellison or sole owner of the new note and mortgage. But that was entirely a different question and involved a different controversy. It had no place in a controversy which should merely have involved the issue of whether the release of Mrs. Garrett of the old mortgage gave the Brackens a title clear of the lien. Had the Brackens obtained such a judgment against Ellison, the Federal Land Bank could have safely dealt with the Brackens. Its dealing with the Brackens depended solely on their title being clear, not on a controversy between Mrs. Garrett and Ellison as to the interest in the Bracken note or its proceeds when paid. In such a suit, solely between the Brackens and Ellison, the only point which would need to have been decided was whether the old mortgage was in fact joint and, if so, whether one joint mortgagee could give a full release. If so, the Brackens would have a title free from the lien and could deal with the Federal Land Bank. If not, they would have required the release of Ellison. Such question could not have depended on whether Ellison had an interest in the note secured by the old lien. Only if it turned out that Mrs. Garrett was a joint mortgagee and as such could not without the other joint mortgagee release, and it was desired to compel Ellison to release, would Mrs. Garrett come into the case. And that because perhaps Ellison could not have been compelled to release if she had an interest in the old note secured by the mortgage.

But, since Mrs. Garrett did join as a plaintiff, I can see no other reason for her being there than to present at the outset the issue as to whether Ellison had any interest in the note or its proceeds. Neither the Brackens nor defendant objecting to her as a party, they must have recognized this issue and submitted to it. That, therefore being the sole reason why Mrs. Garrett was joined, there could not be any objection to any amendment of the pleadings which properly pre-

sented such issue which her presence as a party introduced into the controversy. And it being thus made an issue in the controversy collateral to the question of whether Mrs. Garrett's release to the Brackens was a full release, the principles laid down in the main opinion as to the application of the parol evidence rule apply to this collateral controversy the same as would be the case were it tried out in a separate action.

I therefore concur.