273 P.2d 885

**FULLMER et al. v. MORRILL et ux.**

No. 8089.

Supreme Court of Utah.

Sept. 8, 1954.

Elias Hansen, Salt Lake City, for appellants.

Glenn M. Acomb, Salt Lake City, Harvard R. Hinton, Lehi, for respondents.

VAN COTT, District Judge.

Action by the appellants, H. C. Tebbs, C. F. Tebbs, D. L. Fullmer, and their wives, to recover the reasonable value of four Holstein cattle and three bales of wire which they allege the respondents, defendants below, removed from the plaintiffs' ranch in contravention of an agreement between them. The defendants counterclaimed for $2,900 which they claimed the plaintiffs owed them under said agreement. The court below denied the plaintiffs recovery for the cattle, but gave them judgment for $15 for one and one-half bales of wire which amount he offset pro tanto against $1,900 which he awarded the defendants on their counterclaim. Only the correctness of the judgment as regards the cattle has been raised on this appeal.

On January 5, 1948, the plaintiffs and defendants entered into a written contract wherein the plaintiffs agreed to sell and the defendants agreed to purchase a ranch in Duchesne County in this state, together with certain water rights, farm implements, feed, tools, miscellaneous personal property, and livestock, including 76 head of cattle. The defendants went into possession and remained for about three and one-half years until July 14, 1951, when the parties terminated the contract. To effectuate the termination two instruments were drafted. One instrument was entitled "Contract of Cancellation." In that instrument after reciting that the parties had on January 5, 1948, entered into a contract for the sale and purchase of the ranch, together with certain water rights, farm implements, feed, tools, miscellaneous personal property and livestock including "seventy six head of cattle now on said property," and that the parties desire to cancel the contract, it was provided that the defendants "hereby release and quitclaim to the said * * * [plaintiffs] all of the right, title, and interest of whatsoever nature in and to the property above described for the sum of $8000," and that the plaintiffs agreed to pay the defendants $8,000, $5,000 of which was to be paid at the time of the execution of that instrument and the balance in con-

secutive monthly payments of $100. This "Contract of Cancellation" was signed by all the plaintiffs and defendants.

The other instrument, signed only by the defendants, reads as follows:

"Agreement

Ioka, Utah

July 12, 1951

"For value received receipt of which is hereby acknowledged. We the undersigned assign and transfer to H. C. Tebbs, C. F. Tebbs and D. L. Fullmer all right, title and interest in sales contract entered into on January 5, 1948 for purchase to Real Estate 880 acres, together with all water rights and livestock and machinery described in contract; together with all increase of cattle, consisting in all, 88 (eighty-eight) head of cows, heifers, steers and calves and one small bull; Also all machinery and improvements of every kind and nature that have been added, also one span of work horses, harnesses Wagon one

and ~~two~~ saddle horses and saddle.

"C. M.

"Witness

"s/ Harvard R. Hinton
"s/ Bonnie Bernard
"s/ Cloyd Morrill
"s/ Bernice Morrill"

Although the above instrument bears the date of July 12, 1951, it is not disputed that both instruments were signed on July 14, 1951, at the office of H. C. and C. F. Tebbs in Salt Lake City, Utah.

H. C. Tebbs and D. L. Fullmer, testified that on July 7, 1951, they drove to the ranch and counted 89 head of cattle there; that Mr. Morrill, one of the defendants, told them that if the contract was terminated he would turn back to them 88 head but would keep the other head which was a heifer belonging to his son; that shortly after July 14 when the plaintiffs regained possession of the ranch, a count of the cattle was made and it was discovered that three of the Holstein cattle which were there on July 7 were missing; that they also learned that the defendants had sold a Holstein cow some time in the spring of 1951 to one Benson, who lived on a neighboring ranch; that they went to the Benson ranch and saw that cow; that they then went to the farm to which the defendants had moved in Salt Lake County where they saw in the defendants' corrals the three Holstein cattle which they had counted on the ranch on July 7; that all four cattle in question were identified by them as part of the original 76 head included in the contract of January 5, 1948.

On the other hand, the defendants adduced testimony and documentary evidence that the four cattle were and had always been the property of their sons and that those animals were not on the ranch on July 14 when the parties executed the two agreements but were pastured on a neighboring ranch.

The trial court found that the four cattle were the property of the defendants' sons

and that they were not included in the contract of January 5, 1948, or in the "Cancellation Agreement" of July 14, 1951. It refused to give any effect to the "Agreement" on the ground that it lacked mutuality of obligation because it was signed by only the defendants, and that there was no consideration for its execution. Accordingly, judgment for the reasonable value of the four cattle was denied the plaintiffs.

The plaintiffs prosecute this appeal contending that the "Agreement" and the "Cancellation Agreement" must be construed together as one instrument, and that the $8,000 provided to be paid the defendants in the "Cancellation Agreement" is consideration for the promises of the defendants in the "Agreement"; the "Agreement" was in fact an assignment and does not require the signatures of the plaintiffs, who were the assignees, to be binding; that under the "Agreement" the defendants were obligated to deliver 88 head of cattle to the plaintiffs and that they cannot be relieved of that duty by proving that the four cattle in question belonged to their sons.

■■ We think the trial court properly denied the plaintiffs recovery for the cattle. Assuming that the "Agreement" is binding on the defendants, it does not entitle the plaintiffs to recover the value of the four cattle. When the "Cancellation Agreement" and the "Agreement" are construed together, as plaintiffs insist they should be construed, an intent on the part of the parties is evinced that the defendants should deliver to the plaintiffs the original 76 head of cattle plus all the increase. The "Cancellation Agreement" provides that the defendants release and quitclaim their right, title and interest of whatsoever nature in and to the property "above described" for the sum of $8,000. The property "above described" includes the ranch, water rights, farm implements, feed, tools, miscellaneous personal property, and livestock including 76 head of cattle. No mention of the increase of cattle is made in the "Cancellation Agreement." They are mentioned only in the "Agreement" wherein the defendants again assign and transfer over to the plaintiffs all right, title and interest in the contract of January 5, 1948, for the purchase of the ranch, water rights, machinery, and livestock described in the contract, "together with all increase of cattle, consisting in all, 88 (eighty-eight) head * * *" The *promise* made by the defendants as regards the cattle in the two instruments is thus to turn back the original 76 head and all the increase. The words, "consisting in all, 88 (eighty-eight) head" in the "Agreement" are not part of the defendants' promise but constitute a statement or recital of the total of the original 76 head and the increase. Parol evidence is admissible to contradict a false recital of fact, the parol evidence rule applying only to the *terms* of the contract. Garrett v. Ellison, 93 Utah 184, 72 P.2d 449, 129 A.L.R. 666; 2 Williston on Contracts, Rev.Ed., Sec. 632; 3 Corbin on Contracts, Sec. 586; Restatement

of Contracts, Sec. 244. In this regard the defendants adduced testimony that Mr. Morrill told H. C. Tebbs and Mr. Fullmer on July 7 that he would turn back "approximately 88 head"; that when the "Agreement was presented for his signature on July 14 he objected to the number 88 because he was not certain whether there were 87 or 88 head on the ranch; that he was then assured that "one or two either way would not make any difference"; and that he did in fact turn back 87 head to the plaintiffs.

The construction which we have given the two instruments comports with the plaintiffs' theory in their complaint and at the trial below, viz. that the defendants should deliver to the plaintiffs the 76 original head plus the increase—not that they were obligated to turn over any specific number. By their complaint they sought to recover the reasonable value of four cattle, which they claimed were part of the original 76 head. It is important to note that one of them was sold to Benson in the spring of 1951 and was not among but was in addition to the 88 head which they claimed to have counted on the ranch on July 7. In the trial court's pre-trial order he determined that the following issues of fact existed: "(1) Were the four cattle in question included in the conditional sale contract [of January 5, 1948] or in the contract of cancellation [of July 14, 1951] or were they cattle belonging to third persons brought upon the farm? (2) What is the reasonable value of the four head of Holstein cattle?" Whether the defendants turned back 88 head of cattle or any specific number was not one of the issues.

The plaintiffs having failed to convince the trier of the facts that the defendants did not turn back all the 76 original head and the increase, and there being competent evidence to support the trial court's finding that the four cattle were the property of the defendants' sons, it follows that the judgment below must be affirmed. Costs awarded to defendants.

McDONOUGH, C. J., and CROCKETT, HENRIOD and WADE, JJ., concur.

WOLFE, C. J., being disqualified did not participate in the hearing of this cause.