# United States Court of Appeals for the Federal Circuit

---

**NORTHWEST TITLE AGENCY, INC.,**
*Plaintiff-Appellant*

**v.**

**UNITED STATES,**
*Defendant-Appellee*

---

2016-2158

---

Appeal from the United States Court of Federal Claims in No. 1:15-cv-00248-EGB, Senior Judge Eric G. Bruggink.

---

Decided: April 28, 2017

---

WAYNE B. HOLSTAD, Holstad and Knaak, St. Paul, MN, argued for plaintiff-appellant.

AMANDA TANTUM, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for defendant-appellee. Also represented by BENJAMIN C. MIZER, ROBERT E. KIRSCHMAN, JR., STEVEN J. GILLINGHAM; GABRIEL LOPEZ, NICOLE A. ALLARD, Office of Counsel, Region VIII, United States Department of Housing and Urban Development, Denver, CO.

---

Before NEWMAN, DYK, and TARANTO, *Circuit Judges.*

NEWMAN, *Circuit Judge.*

Northwest Title Agency, Inc. (NWTA) appeals from the decision of the United States Court of Federal Claims, granting summary judgment in favor of the United States.[1] The Court of Federal Claims concluded that the contracts whereby NWTA provides closing services for homes owned by the Department of Housing and Urban Development (HUD) unambiguously preclude NWTA from charging additional closing fees. We *affirm* the judgment.

## BACKGROUND

HUD, through the Federal Housing Administration (FHA), administers the Single Family Mortgage Insurance Program. In that capacity, HUD insures approved lenders against the risk of loss on loans for the purchase of single-family homes. In the event that the borrower of an FHA-insured home loan defaults, the home is foreclosed and is conveyed to HUD by the lender in exchange for payment by HUD of the insured amount. HUD engages contractors to perform the necessary closing activities when HUD resells these properties. NWTA, a title agency and settlement service provider, is such a contractor.

In 2010, NWTA and HUD entered into three nearly identical two-year contracts pursuant to which NWTA would provide closing services, in three states, for single family properties owned by HUD. The contracts differed as to the estimated number of services expected under the contracts and the price for each service, but the contracts were otherwise identical. The first contract, designated

---

[1]    *Northwest Title Agency, Inc. v. United States*, 126 Fed. Cl. 55 (2016) ("Fed. Cl. Op.").

C-DEN-02376, was executed on February 11, 2010 for properties in Wisconsin. The second, C-DEN-02375 executed on April 12, 2010, applies to Minnesota properties. Contract C-DEN-02363, executed on April 28, 2010, applies to Missouri properties. Paragraph B.4.1 of the three contracts included:

> As total compensation for all services performed under this contract, the contractor will be paid according to the Contract Line Item Number (CLIN) prices listed below for closings conducted. The unit price per closing specified herein shall be inclusive of <u>all</u> costs, including, but not limited to: the cost of all labor; supervision; fringe benefits, travel, subcontracts, other direct costs, overhead; general and administrative costs; profit/fee; the completion of all documents necessary to close the transaction as well as the cost to complete all financing documents when requested by the buyer or lender to complete the loan portion of the transaction; the cost of phones, postage, postage pre-paid envelopes; shipping (including closed files to storage), delivery costs, courier costs, express mail, faxing, scanning, document reproduction [which includes forms HUD-9546 (Homeowner Satisfaction Survey) and HUD 9547 (Real Estate Broker Satisfaction Survey)]; notary fees, transportation, wire transfer fees, recording fees, annual reconciliation costs, title search costs (see paragraph 4.2.2); ACA documents (see paragraph 4.4.2.2), any and all licenses, insurance, certificates or permits as stated in Section C, Paragraph 4.1.2; and all office requirements unless otherwise specifically identified in this contract.

*Id.* (emphasis original). Paragraph B.4.2 was directed to closing costs:

> Except as explicitly allowed in Paragraph
> <u>C.4.4.2.2 below</u>, the purchaser, lender, and/or sell-
> er shall not pay any additional costs for closing
> services, including an additional lender fee.

*Id.* (emphasis original). Paragraph C.4.3, entitled "Clos-ing Activities," provided that "HUD's buyers may at all times be assisted by their own advisors and attorneys and may choose their own closing agent to represent their interests in the transaction." Paragraph C.4.2.3.1.2 permitted homebuyers to purchase optional title insur-ance, either from NWTA or "any firm offering such insur-ance."

NWTA provided closing services under the contracts until 2012 and offered and sold title insurance to home-buyers. HUD allowed NWTA to charge homebuyers for title insurance in all three states and for associated title searches in Minnesota and Wisconsin. HUD disallowed NWTA charges for additional title searches in Missouri and disallowed closing service fees to homebuyers in all three states.

On March 10, 2015 NWTA filed a complaint (later amended) in the Court of Federal Claims, alleging that HUD breached the contracts by preventing NWTA from charging buyers "for any of the closing services referenced in Section B.4.1." Amended Complaint ¶8. NWTA sought $4,242,850 to compensate for the revenue lost due to the inability to charge closing fees to homebuyers.

The government moved to dismiss NWTA's suit. The Court of Federal Claims converted the motion to a motion for summary judgment, and after briefing the court granted summary judgment, holding that "the contracts unambiguously prohibit NWTA from charging buyers additional costs for closing services." Fed. Cl. Op. at 58. The court declined to consider the affidavit of industry practice submitted by NWTA, stating that the "customary practice" is "irrelevant here because the contracts unam-

biguously prohibit the charging of such fees except when the property is subject to an ACA Agreement." *Id.* at 59. The Court of Federal Claims also ruled that the fee prohibition does not conflict with the buyers' rights, as stated in the contracts, to retain a title company of their own choosing. *Id.* at 60.

NWTA appeals, disputing the court's contract interpretation.

## DISCUSSION

Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Castle v. United States*, 301 F.3d 1328, 1336 (Fed. Cir. 2002). We review *de novo* the grant of summary judgment by the Court of Federal Claims. *TEG-Paradigm Envtl., Inc. v. United States*, 465 F.3d 1329, 1336 (Fed. Cir. 2006). Contract interpretation is a question of law, which we also review *de novo. Id.*

## A

NWTA argues that the Court of Federal Claims erred in holding that the contracts prohibit charging closing fees to homebuyers. NWTA states that the contracts are ambiguous, and that industry practice demonstrates that homebuyers and sellers may be represented by separate closing agents and would thereby pay separate closing fees. The government responds that the contracts unambiguously prohibit the additional charges for "closing services" that NWTA claims to be entitled to collect from the homebuyers.

When interpreting a contract, "the language of [the] contract must be given that meaning that would be derived from the contract by a reasonably intelligent person acquainted with the contemporaneous circumstances." *Metric Constructors, Inc. v. Nat'l Aeronautics & Space Admin.*, 169 F.3d 747, 752 (Fed. Cir. 1999) (quoting *Hol–*

*Gar Mfg. Corp. v. United States*, 351 F.2d 972, 975 (Ct. Cl. 1965)). When the contract's language is unambiguous it must be given its "plain and ordinary" meaning and the court may not look to extrinsic evidence to interpret its provisions. *Coast Fed. Bank, FSB v. United States*, 323 F.3d 1035, 1040 (Fed. Cir. 2003) (*en banc*).

The contracts provide: "[t]he unit price per closing specified herein shall be inclusive of <u>all</u> costs." Paragraph B.4.1. (emphasis original). Paragraph B.4.2 continues: "[e]xcept as explicitly allowed in Paragraph C.4.4.2.2 below, the purchaser, lender, and/or seller shall not pay any additional costs for closing services, including an additional lender fee." *Id.* (emphasis omitted). The costs and fee requested by NWTA are not within any explicit exception. We conclude that a reasonable and prudent contractor would not have read the contracts as authorizing the charge of closing fees to homebuyers. *See H.B. Mac, Inc. v. United States*, 153 F.3d 1338, 1345 (Fed. Cir. 1998) ("[A] proper technique of contract interpretation is for the court to place itself into the shoes of a reasonable and prudent contractor and decide how such a contractor would act in interpreting the contract documents.").

The Court of Federal Claims correctly found the contracts unambiguous, and not subject to modification by the asserted trade practice and custom. "Trade practice and custom may not be used, however, 'to create an ambiguity where a contract was not reasonably susceptible of differing interpretations at the time of contracting.'" *TEG-Paradigm*, 465 F.3d at 1338 (quoting *Metric Constructors*, 169 F.3d at 752).

## B

NWTA also argues that abiding by the plain-language interpretation of the contract would violate the Real Estate Settlement Procedures Act (RESPA) by providing a purported discount for title insurance purchased from NWTA. The government responds that prohibiting

NWTA from charging closing fees to homebuyers does not violate RESPA because the contracts do not force or coerce homebuyers to purchase title insurance from NWTA. RESPA provides: "[n]o seller of property that will be purchased with the assistance of a federally related mortgage loan shall require directly or indirectly, as a condition to selling the property, that title insurance covering the property be purchased by the buyer from any particular title company." 12 U.S.C. § 2608(a).

We agree with the Court of Federal Claims that these contracts are not reasonably interpreted as forcing home-buyers to purchase title insurance from NWTA over another title insurer. The contracts make title insurance optional, and Paragraph C.4.3 explicitly provides buyers the option to retain their own closing agents, advisors, attorneys, and title insurers. That a homebuyer takes advantage of closing services paid for by the government under the contracts is not a coercion to purchase optional title insurance from NWTA.

NWTA also argues that it was wrongly prohibited from charging for additional title searches conducted in Missouri as part of the title insurance process. NWTA had not previously raised this argument, and has provided no evidence that additional searches were necessary to issue title insurance.

## CONCLUSION

We conclude that the contracts are unambiguous in precluding NWTA from charging closing fees to homebuyers, except in limited exceptions not applicable here. Judgment in favor of the government is affirmed.

**AFFIRMED**