# United States Court of Appeals for the Federal Circuit

---

**P.K. MANAGEMENT GROUP, INC.,**
*Appellant*

**v.**

**SECRETARY OF HOUSING AND URBAN DEVELOPMENT,**
*Appellee*

---

2020-1260

---

Appeal from the Civilian Board of Contract Appeals in No. 6185, Administrative Judge Kyle E. Chadwick, Administrative Judge Allan H. Goodman, Administrative Judge Beverly M. Russell.

---

Decided: February 4, 2021

---

NICHOLAS SOLOSKY, Fox Rothschild LLP, Washington, DC, argued for appellant. Also represented by DOUGLAS HIBSHMAN, RONNI TWO.

GEOFFREY MARTIN LONG, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for appellee. Also represented by JEFFREY B. CLARK, MARTIN F. HOCKEY, JR., ROBERT EDWARD KIRSCHMAN, JR.; JONATHAN ENGLISH,

Office of General Counsel, United States Department of Housing and Urban Development, Washington, DC.

_____

Before PROST, *Chief Judge,* LOURIE and HUGHES, *Circuit Judges.*

HUGHES, *Circuit Judge.*

P.K. Management Group, Inc. appeals a Civilian Board of Contract Appeals decision denying its claim that it should receive individual payments for inspections of Custodial properties under a contract with the Department of Housing and Urban Development. Because we agree with the Board's determination that the contract terms unambiguously cover routine inspections through a monthly fee rather than individual payments, we affirm.

I

Under contract DU204SA-14-D-06 with HUD (the Contract), P.K. Management Group (PKMG) manages multiple types of properties in HUD's possession, including "HUD-Owned Vacant" properties and "Custodial" properties. HUD-Owned properties are those that "HUD owns," J.A. 139, while Custodial properties are those of which HUD has taken possession but does not yet have title, J.A. 143–44.

The Contract requires PKMG to perform various services related to the properties. For example, for each relevant property that comes into HUD's possession, PKMG must perform an initial inspection and some initial services maintaining the property. As HUD's possession of the property continues, PKMG must conduct ongoing management of the property. The specifics of ongoing management vary by property type. HUD does not own Custodial properties, so they are "not marketable" and have "limited property management tasks." *Id.* Relevant here, PKMG must perform bi-weekly inspections of each property type. *See*

J.A. 163, 171. These inspections are more thorough for HUD-Owned properties because HUD-Owned properties must be in "Ready to Show Condition," while Custodial properties generally do not need to be ready for showing. *Compare* J.A. 163, *with* J.A. 171.

The Contract lists the compensation for each contractual service in a series of Contract Line Item Numbers (CLINs). The Contract requires HUD to pay "as full compensation for all work required, performed and accepted under [the] contract, inclusive of all costs and expenses, the fixed-unit-rate for the applicable CLINs and applicable periods, as stated in Part I, Section B of [the] contract." J.A. 191. The contract requires some services to be compensated individually, while others are covered under monthly fees.

The issue here is which CLIN specifies the compensation for routine, bi-weekly inspections of Custodial properties.

At first, HUD paid PKMG individually for every bi-weekly inspection, applying the per-inspection fee from CLIN 0005AA regardless of property type. Later, HUD began rejecting invoices for inspections of Custodial properties and only providing individual payments for HUD-Owned properties. *P.K. Mgmt. Grp., Inc. v. HUD*, 2019 CIVBCA Lexis 208, *5 (Aug. 20, 2019). PKMG submitted a claim to the HUD contracting officer seeking a determination that PKMG is entitled to CLIN 0005AA fees for inspections of Custodial properties. *Id.* The officer denied the claim, stating that "the contract is clear that CLIN 0005AA applies to HUD-Owned Vacant Properties only." *Id.* at *5–6. The officer explained the prior payments by noting that HUD's payment system "was erroneously programmed" to pay for each inspection individually, and that the change in behavior did not signal a change in interpretation. *Id.* at *6. PKMG appealed to the Board, which denied the appeal,

deeming the Contract language unambiguous. *See id.* at *6–14. PKMG now appeals to this court.

II

Pursuant to the Contract Disputes Act, 41 U.S.C. § 7107(b)(1), we review the Board's decisions on questions of law de novo. *Dai Glob. v. Adm'r of the United States Agency for Int'l Dev.*, 945 F.3d 1196, 1198 (Fed. Cir. 2019). However, "we give the Board's interpretation of government contracts careful consideration given its considerable experience and expertise." *Agility Logistics Servs. Co. KSC v. Mattis*, 887 F.3d 1143, 1148 (Fed. Cir. 2018). Contractual interpretation is a pure legal issue.

PKMG argues that CLIN 0005AA requires HUD to pay individually for each inspection of Custodial properties. However, for the following reasons, we hold that the plain meaning of the contract is that CLIN 0006 covers these inspections through a monthly fee.

First, the title of CLIN 0005AA indicates that it applies only to HUD-Owned properties. CLIN 0005AA is entitled "On-Going Property Inspection HUD-Owned Vacant." J.A. 278. Although Custodial properties are in HUD's possession, they are not owned by HUD. *See* J.A. 143 (noting that for Custodial properties, "[t]itle is not yet in HUD's name."). Thus, as the Board noted, "[i]n order to accept PKMG's position that CLIN 0005AA sets the unit price of inspections of *custodial* properties, we would need to read the words 'HUD-owned vacant' out of CLIN 0005AA . . . ." *P.K. Mgmt. Grp., Inc.*, 2019 CIVBCA Lexis 208, at *10. "An interpretation that gives meaning to all parts of the contract is to be preferred over one that leaves a portion of the contract useless, inexplicable, void, or superfluous." *NVT Techs., Inc. v. United States*, 370 F.3d 1153, 1159 (Fed. Cir. 2004) (citing *Gould, Inc. v. United States*, 935 F.2d 1271, 1274 (Fed. Cir. 1991)). PKMG's argument would make the title of CLIN 0005AA inexplicable.

Another indication that CLIN 0005AA only applies to HUD-Owned Vacant properties is its connection with CLIN 0005. Neither party disputes that CLIN 0005 (entitled "On-Going Property Management (PM) Fee, HUD-Owned Vacant") applies only to HUD-Owned vacant properties, and the two CLINs are linked by both their numbering and titles. *See P.K. Mgmt. Grp., Inc.*, 2019 CIVBCA Lexis 208, at \*4. Thus, the Board called CLIN 0005AA a "sub-CLIN" of CLIN 0005. *Id.* at \*9. PKMG disputes this "sub-CLIN" characterization because "sub-CLIN" isn't a term in the Contract, but regardless, the most sensible interpretation is that provisions with related numbering apply to the same properties, particularly when both have titles that say "HUD-Owned Vacant." PKMG's interpretation would require us to deem the CLIN numbering system and titles meaningless.

Only CLIN 0006 refers to Custodial properties, and we hold that this CLIN governs the compensation for routine inspections of Custodial properties. Entitled "Inspection, Initial Services, On-Going [Property Management] For Custodial Properties," CLIN 0006 sets a monthly fee that covers a variety of services. J.A. 278. The parties do not dispute that all other services associated with Custodial properties are covered by this monthly fee, so it would be anomalous to interpret this one service, routine inspections of Custodial properties, to be covered by a separate provision, which by its title only addresses fees for HUD-Owned properties. Thus, we agree with the Board that "the fixed monthly price in CLIN 0006 includes inspections of custodial properties." *P.K. Mgmt. Grp., Inc.*, 2019 CIVBCA Lexis 208, at \*13.

PKMG raises several arguments to the contrary, but we find none of them persuasive. PKMG contends that because one section of the Contract lays out criteria for receiving "credit" for routine inspections of Custodial properties, the inspections must be individually compensated. *See* Appellant's Br. 16 (citing J.A. 163–64). But

"credit" does not equate to payment. One can receive credit for a required task without being individually paid for that task. In another section, the Contract describes the consequences of the "failure of the Contractor to perform . . . *any* routine inspection" under CLIN 0005AA. J.A. 125 (emphasis added). PKMG argues that the use of the word "any" here indicates that CLIN 0005AA deals with all routine inspections, not just those of HUD-Owned properties. Appellant's Br. 12–13. But a more reasonable interpretation is that, to the extent this passage discusses CLIN 0005AA, it simply refers to any routine inspection under CLIN 0005AA, i.e., any inspection of a HUD-Owned property.

Reading the Contract as a whole, we hold that the plain meaning places compensation for routine inspections of Custodial properties under CLIN 0006 rather than CLIN 0005AA. Because the Contract is unambiguous, we follow the plain meaning without considering extrinsic evidence or related arguments. *Nw. Title Agency, Inc. v. United States*, 855 F.3d 1344, 1347 (Fed. Cir. 2017) (citing *Coast Fed. Bank, FSB v. United States*, 323 F.3d 1035, 1040 (Fed. Cir. 2003) (en banc)).

## III

We have considered PKMG's remaining arguments and find them unpersuasive. Because we agree with the Board that CLIN 0006, rather than CLIN 0005AA, governs compensation for routine inspections of Custodial properties, we affirm.

**AFFIRMED**