# United States Court of Appeals for the Federal Circuit

---

**NOVA GROUP/TUTOR-SALIBA,**
*Plaintiff-Appellant*

**v.**

**UNITED STATES,**
*Defendant-Appellee*

---

2022-1740

---

Appeal from the United States Court of Federal Claims in Nos. 1:15-cv-00885-MCW, 1:16-cv-00925-MCW, Senior Judge Mary Ellen Coster Williams.

---

Decided: December 11, 2023

---

G. SCOTT WALTERS, Smith, Currie & Hancock LLP, Atlanta, GA, argued for plaintiff-appellant. Also represented by ROBERT O'NEAL FLEMING, JR.; SARAH CARPENTER, Charlotte, NC; ALEXANDER GORELIK, Tysons, VA.

ANDREW JAMES HUNTER, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for defendant-appellee. Also represented by BRIAN M. BOYNTON, STEVEN JOHN GILLINGHAM, PATRICIA M. MCCARTHY.

---

Before CHEN, CUNNINGHAM, and STARK, *Circuit Judges.*

STARK, *Circuit Judge.*

Nova Group/Tutor-Saliba ("NTS") appeals from the judgment of the United States Court of Federal Claims that NTS failed to demonstrate it was entitled to recover additional compensation for alleged differing site conditions it encountered during the performance of a construction contract. We affirm.

I

In May 2008, the United States Department of the Navy, acting through the United States Naval Facilities Engineering Command (collectively, the "government"), awarded NTS a contract to build a new aircraft carrier maintenance pier at Naval Base Kitsap in Bremerton, Washington. The contract required NTS to demolish an old pier; design and build a replacement pier ("Pier B"); and build a new structure, known as the Mole Quaywall, that would be designed by the government. The Mole Quaywall would be integrated with the adjacent Pier B to create a contiguous surface.

Construction of both the Mole Quaywall and Pier B involved driving supporting concrete piles into the subsurface soils until they reached certain "pile tip elevations."[1] The pile tip elevations for the government-designed Mole Quaywall were prescribed in the solicitation for bids. In particular, that solicitation included a geotechnical engineering report, known as the Geotechnical Engineering Baseline Survey ("GEBS"). The GEBS supplied information about the subsurface soil conditions at the Mole

---

[1] Here, the "pile tip elevation" refers to the depth below ground, not the altitude above ground, to which the successful bidder would be required to drive the concrete piles.

Quaywall construction site and the adjacent Pier B site. It was anticipated, then, that the successful bidder for the contract, which included both the Mole Quaywall and the Pier B sites, would use the information provided in the GEBS to formulate its design for the pile tip elevations at Pier B. The successful bidder would also be responsible for calculating the length and required materials for the piles to be installed at the Mole Quaywall and Pier B.

NTS was awarded the contract. During NTS' construction of the Mole Quaywall according to the government's design, NTS encountered subsurface soil conditions that made it difficult to drive some of the piles to reach the tip elevations prescribed by the government. This required NTS to cut off greater lengths of those piles than planned, adding to the expense of the project. The subsurface conditions also caused some piles to move during installation and fall outside the specified levels of tolerance for variations.

In December 2009, NTS submitted a request for equitable adjustment ("REA 5"), seeking additional costs incurred due to the site conditions it encountered at the Mole Quaywall, in the amount of over $1 million. In response, the government issued Contract Modification No. A00057 ("Mod. A00057"). Mod. A00057 was entered into pursuant to the authority of "FAR 52.236-2 Differing Site Conditions (APR 1984)" and provided for "settlement of contractor[']s Request for Equitable Adjustment Number 5 for differing site conditions encounter[ed] at the [M]ole [Quaywall]." J.A. 17959-61. Under Mod. A00057, the total cost of the contract was increased by $675,000.

Based on its experience with the site conditions at the adjacent Mole Quaywall, NTS made multiple modifications to its Pier B design, including revising the pile tip elevations. NTS encountered pile-driving problems at Pier B just as it had at the Mole Quaywall. Some Pier B piles

could not reach the designed tip elevations, forcing longer-than-expected cutoffs, and numerous piles fell outside of the specified tolerance levels.

In October 2011, NTS submitted another request for equitable adjustment ("REA 9"), this one for the additional costs incurred due to the Pier B site conditions. REA 9, which alleged differing site conditions at Pier B, sought more than $10 million of additional payments, which the government denied. NTS then filed suit in the Court of Federal Claims. NTS alleged that it had encountered "Type I differing site conditions" at the Pier B site due to conditions and obstructions not disclosed in the contract documents, or alternatively a "Type II differing site condition" due to "unknown physical condition."[2] J.A. 36.

During discovery, the government produced a pre-negotiation business clearance memorandum pertaining to REA 5 and Mod. A00057. The memo stated that while the government did "not see" the condition at the Mole Quaywall "as being a differing site condition," it agreed it was responsible for the additional costs NTS had incurred "[d]ue to the Government providing the [Mole Quaywall's] pile tip elevations." J.A. 8633. NTS sought to exclude the memo from being introduced into evidence in the Court of Federal Claims trial on its Pier B-related claim, invoking the parol evidence rule. The Court of Federal Claims denied NTS' motion *in limine* and, over NTS' objection,

---

[2]    A Type I differing site condition arises "when the conditions encountered differ from what was indicated in the contract documents." *Renda Marine, Inc. v. United States*, 509 F.3d 1372, 1376 (Fed. Cir. 2007). A Type II differing site condition arises "when the conditions encountered are of an unusual nature and differ materially from those normally encountered in the kind of work contemplated by the contract." *Id.*

admitted the memo and then permitted witness testimony supporting the government's contention that it did not actually believe the situation in REA 5 constituted a differing site condition at the Mole Quaywall. J.A. 7309-15.

The Court of Federal Claims issued its post-trial opinion in March 2022. *See Nova Grp./Tutor-Saliba v. United States*, 159 Fed. Cl. 1 (2022). It found that NTS failed to demonstrate that it was entitled to relief on its Pier B differing site condition claim. *See id.* at 34-44. Specifically, the Court of Federal Claims held that NTS had not established a Type I differing site condition because, among other things, the contract documents disclosed that NTS would encounter unpredictable subsurface conditions and possible obstructions, and indicated that "[h]ard [d]riving [w]as to be [e]xpected." *Id.* at 39. NTS had failed to prove a Type II differing site condition because it had "not demonstrated that any of [the] potential causes for hard driving . . . were unknown or unusual in the region or materially different from comparable work." *Id.* at 44.

NTS timely appealed. The Court of Federal Claims had jurisdiction pursuant to 28 U.S.C. § 1491(a)(2) and we have jurisdiction under 28 U.S.C. § 1295(a)(3).

## II

We review the Court of Federal Claims' legal determinations de novo and its fact findings for clear error. *See Ind. Mich. Power Co. v. United States*, 422 F.3d 1369, 1373 (Fed. Cir. 2005). Contract interpretation is a question of law, which we review de novo. *See Nw. Title Agency, Inc. v. United States*, 855 F.3d 1344, 1347 (Fed. Cir. 2017).

The parol evidence rule precludes the admission of extrinsic evidence "to modify, supplement, or interpret the terms of an integrated agreement." *Barron Bancshares, Inc. v. United States*, 366 F.3d 1360, 1375 (Fed. Cir. 2004). Our precedent has not explicitly set out the standard of

review of a trial court's application of the parol evidence rule. We have, however, recognized that the parol evidence rule is "a rule of substantive law," not a rule of evidence. *Id.*; *see also David Nassif Assocs. v. United States*, 557 F.2d 249, 256 (Ct. Cl. 1977). We have further explained that certain issues preliminary to the application of the parol evidence rule, including whether a contract is completely integrated and whether an ambiguity exists in a contract, are questions of law subject to de novo review. *See Rumsfeld v. Freedom NY, Inc.*, 329 F.3d 1320, 1328 (Fed. Cir. 2003) (whether contract is completely integrated); *Gardiner, Kamya & Assocs., P.C. v. Jackson*, 467 F.3d 1348, 1353 (Fed. Cir. 2006) (whether ambiguity exists in contract). It follows that we review the trial court's application of the parol evidence rule de novo. In so holding, we join our sister circuits that have addressed this issue. *See, e.g.*, *GTE Wireless, Inc. v. Cellexis Int'l, Inc.*, 341 F.3d 1, 4 (1st Cir. 2003); *Simmons Foods, Inc. v. Hill's Pet Nutrition, Inc.*, 270 F.3d 723, 726 (8th Cir. 2001); *Day v. Am. Seafoods Co.*, 557 F.3d 1056, 1057 (9th Cir. 2009); *McCurdy Grp., LLC v. Am. Biomedical Grp., Inc.*, 9 F. App'x 822, 830 (10th Cir. 2001).

## III

NTS raises two issues on appeal. First, it argues that the Court of Federal Claims erred in considering parol evidence that, it asserts, contradicted the government's "stated basis" for issuing Mod. A00057. Appellant's Br. at 2. Second, it contends that the Court of Federal Claims erred in denying its Pier B differing site condition claim based on the design-build nature of the contract. We address each issue in turn.

## A

We begin with the parol evidence rule issue. There is no dispute that Mod. A00057, by which the government granted NTS' REA 5 seeking additional payments for a

differing site condition at the Mole Quaywall, is a fully integrated agreement.  NTS argues that since the terms of Mod. A00057 provided that the contract modification was issued under the authority of "FAR 52.236-2 Differing Site Conditions (APR 1984)" to settle "contractor[']s Request for Equitable Adjustment Number 5 for differing site conditions encounter[ed] at the [M]ole [Quaywall]," J.A. 17959-61, the admission of evidence demonstrating that the government did not actually believe there was a differing site condition at the Mole Quaywall violated the parol evidence rule.  We disagree.

"[T]he parol evidence rule does not, per se, foreclose consideration of matters external to the parties' written agreement." *David Nassif*, 557 F.2d at 256.  Instead, the rule "prohibits the use of external evidence to *add to or otherwise modify* the terms of a written agreement . . . [that] has been adopted by the parties as an expression of their final understanding." *Barron*, 366 F.3d at 1375 (emphasis added); *see also Rumsfeld*, 329 F.3d at 1327 ("[B]arring certain limited exceptions (e.g., fraud), a party to a written contract cannot supplement or interpret [an integrated] agreement with oral or parol statements that conflict with, supplant, or controvert the language of the written agreement itself.").  Here, the evidence NTS challenges was not introduced by the government "to add to or otherwise modify" the terms of Mod. A00057.  The government moved the memo into evidence and elicited trial testimony relating to it *not* to modify its contractual obligation to pay NTS an additional $675,000 on REA 5 but, instead, to support its collateral contentions as to why it settled (i.e., because it was the government that prescribed the pile tip elevations for the Mole Quaywall project).  *See* J.A. 8633; *see also* J.A. 7309-15 (testimony that government did not agree there was differing site condition at Mole Quaywall).  An agreement to settle a claim alleging a differing site condition under a clause governing differing site conditions is different

from an agreement that the alleged differing site condition actually existed. As we see no provision in Mod. A00057 that actually binds the government to an agreement that a differing site condition existed (as opposed to Mod. A00057 unambiguously binding the government to *settle* a differing site condition claim), the memo and related testimony do not modify any term of the contract. The trial court, therefore, did not violate the parol evidence rule.

NTS' contention fails for the additional reason that the parol evidence rule does not prevent a party to a contract from presenting evidence that "'a recital of fact in an integrated agreement may be . . . untrue.'" *United Pac. Ins. Co. v. Roche*, 401 F.3d 1362, 1365 (Fed. Cir. 2005) (quoting Restatement (Second) of Contracts § 218). In *United Pacific*, we held that the government was not obligated to pay the surety balance referenced in a takeover agreement's "[w]hereas" clause because the "[w]hereas" clause is merely "a recital of fact." *Id.* at 1365-66.

Here, the provisions of Mod. A00057 on which NTS relies are, at best for NTS, "a recital of fact." *See* Black's Law Dictionary 1524 (11th ed. 2019) (defining "recital" as "preliminary statement in a contract or deed explaining the reasons for entering into it or the background of the transaction"); *see also* 17A C.J.S. Contracts § 420 (stating recitals are "explanations of the circumstances surrounding the execution of the contract"). We know the provisions on which NTS relies are recitals because they do not themselves create promises, obligations, or substantive rights; therefore, they are not operative terms that are protected against alteration by the parol evidence rule. *See, e.g.*, *Popplewell v. Stevenson*, 176 F.2d 362, 363 (10th Cir. 1949) (holding that parol evidence rule "has application to actions where the enforcement of an obligation created by the writing is substantially the cause of action"). Therefore, again, the trial court's admission of the memo and testimony relating to it did not violate the parol evidence rule.

B

We next turn to NTS' argument that the Court of Federal Claims erred in denying its differing site condition claim on the basis that it was a design-build contract. This contention provides no basis to reverse the Court of Federal Claims because it mischaracterizes the trial court's analysis.

According to NTS, the Court of Federal Claims "explained [its] ruling in a footnote." Appellant's Br. at 27. That footnote, in its entirety, reads:

> NTS suggests that because the Government granted an equitable adjustment of $675,000 for differing site conditions at the adjacent Mole Quaywall under Contract Modification A00057, NTS is entitled to an equitable adjustment for pile driving difficulties at Pier B. However, the Government did not deem the situation at the Mole Quaywall to be a differing site condition. There is a significant difference in what transpired at the Mole – *the Government* provided the design and pile tip elevations for the Mole Quaywall, while NTS designed and chose the pile lengths and arrangement for Pier B.

*Nova Grp.*, 159 Fed. Cl. at 35 n.17.

This footnote, at most, addressed why NTS was not automatically entitled to an equitable adjustment for pile-driving difficulties at Pier B just because the government had granted an equitable adjustment at the Mole Quaywall. To suggest that this footnote constitutes the entire explanation of the Court of Federal Claims' ruling, or even an alternative, independent basis for its judgment, is incorrect. The Court of Federal Claims devotes approximately a dozen pages of its opinion to a thorough, element-by-

element analysis of NTS' Type I and Type II differing site condition claims, carefully reviewing the entirety of the record evidence and applying the appropriate legal standards. *See id.* at 34-44. The court's conclusion that NTS failed to establish a differing site condition at Pier B is clearly based on the totality of that analysis, not simply on the design-build nature of the Pier B project.

Thus, while NTS is correct that the design-build nature of a contract does not place the risk of error in the government's representations on the contractor, *see Metcalf Constr. Co. v. United States*, 742 F.3d 984, 995-96 (Fed. Cir. 2014), the Court of Federal Claims simply did not make a mistake on this issue here.

## IV

We have considered NTS' remaining arguments and find them unpersuasive.[3] For the foregoing reasons, then, we affirm the judgment of the Court of Federal Claims.

**AFFIRMED**

---

[3]    In its reply brief on appeal, NTS faults the trial court for failing to consider extrinsic evidence NTS argues "[r]efuted the [i]mproperly [a]dmitted [p]arol [e]vidence." Reply Br. at 4-5. This issue is forfeited. *See United States v. Ford Motor Co.*, 463 F.3d 1267, 1276 (Fed. Cir. 2006) ("Arguments raised for the first time in a reply brief are not properly before this court.").